Madam Clerk, please call the next case. 111, Area 253, Elite Staffing v. Renee Aguilar. Good morning. Good morning. My name is Carolina Zielinska. I represent Elite Staffing, the respondent in this matter. Your Honors, if I could please reserve five minutes for rebuttal as well. You will have that. Thank you. Your Honors, there are multiple issues on appeal in this case. Today I would like to specifically focus on the issue of reasonableness and necessity as it pertains to the physical therapy treatment at Marque Medicos that Petitioner received. Just a quick summary. Petitioner was employed for about two months. There was a slip and fall accident. He fell on his back. Sought treatment immediately and eventually went to see Dr. Perez at Marque Medicos, and that's when he started physical therapy treatment. The treatment from November 30th of 2009 through December 30th of 2009 is not in dispute today. What is in dispute is the Commission's modification of the arbitrator's award pertaining to the physical therapy following December 30th all the way through February 19th of 2010, which totaled approximately $23,000 in medical costs. This case was decided on April 13th, 2010, and in her decision the arbitrator concluded that the physical therapy and chiropractic treatment that the Petitioner received at Marque Medicos beginning in January of 2010 was not reasonable or necessary to cure or relieve his effects of injury. On appeal, the majority of the Commission, and this was not a decision where all three Commissioners agreed, the majority opinion in the Commission modified the arbitrator's award and found that this physical therapy treatment from January 1st onwards was reasonable and necessary. I submit to this Court that that modification was against the manifest weight of the evidence. Under Section 8A, an employer is required to approve and pay for all of the necessary first aid, medical and surgical services, as well as necessary medical treatment, but only to that which is reasonably required to cure or relieve the effects of the accidental injury. And that burden, as Your Honors know, is beyond, or excuse me, is by a preponderance of the evidence and it rests on the Petitioner. In this case, the claimant simply did not meet that burden. Counsel, on January 12th, 2010, the therapist noted that while the claimant continued to have complaints of back pain, he had shown improvement, and then he therefore recommended the treatment continue. Judge, on December 30th, the Petitioner himself testified, and it states in the record that he was not improving. On January 29th, he was rating his pain at 4 out of 10. On February 11th, he was rating his pain at 8 out of 10. So while you are correct in the sense that on that particular day he may have said, I was improving, at trial he clearly testified, I am not getting any better. And that is further shown by the fact that he started getting injections thereafter. Are you relying on Dr. Bernstein's report as well? Yes. We are relying, Dr. Bernstein, the arbitrator and the dissenting commissioner relied on Dr. Bernstein, but not to the fact of whether this was passive or active, which was a lot of a discussion by the commission, but simply on the fact of whether the treatment was helping. At the end of the day, what really matters in regards to reasonableness and necessity is whether the treatment is improving a Petitioner's condition. So what the commission did here is they almost fashioned their own issue on this case. They said, well, is this active, is this passive? We are going to say that it was active physical therapy, and therefore it's reasonable necessary. But that shouldn't be the issue in this case. The issue should be, was the treatment improving? Was it helping Petitioner? And there are four things that both the arbitrator relied on as well as the dissenting commissioner relied on. Counsel, could you tell me what cases you cited to support that proposition? Because I noticed in your argument section you cite no cases at all. Judge, if you're referring to the fact of what needs to be proven for reasonableness and necessary treatment, it really is a question of facts for the commission to decide. No, but my question for you is you cite absolutely no cases in this brief in support of any proposition of law other than boilerplate cases for standard of review. And so you've told that you've articulated a principle for us, and it finds no support in your brief. There were no cases cited. It's strictly a Section 8A issue that we are arguing before the Court. So that would mean that the issues are waived? I'm sorry? Issues are waived for failures in authority? Your Honor, you know, the brief was written the way it was written. Under Section 8A of the Act, as I stated earlier, it is the burden of the Petitioner and the employer is required to pay for this treatment if it's found to be reasonably required to cure relief. The symptoms in this case were arguing that the medical evidence simply showed that it was not. But you've also argued the commission erred in finding the expenses associated with for a claimant's follow-up visits with Dr. Perez were reasonable and necessary. You're challenging that as well, correct? Yes, we are challenging it. On what basis are you challenging that? If you look at the record, I don't have the exact citations before me, I apologize. But if you look at the record, the medical treatment that was undertaken before December 30th has specific treatment records associated with it. And there are progress notes and so forth that go along with those. Those four that Your Honor is referring to, those four treatment dates, don't have that. What they have is what counsel refers to as SOAP notes. Those are different notes than the notes that are associated with the previous visits. So it's almost as if Petitioner is being treated and documentation was being made for his symptoms while it was improving and then once these conditions started worsening, the documentation changed. The arbitrator found that it was not enough. So did the dissenting commissioner, and that is what we base on. Well, what do you make of the fact that the record contains daily progress notes from each of those four dates? It verifies it was examined by Dr. Perez. The notes list claimant's objective complaints, Dr. Perez's objective findings, his assessment, and treatment plan. So what's wrong with that? Those notes were simply different notes than the ones that were used prior to that. They were not as thorough and they were not progress reports, if you will. If I may just continue on the basis of reasonable necessity as to marking Medicos, the arbitrator relied on the following. First, Petitioner at trial testified himself that he had not felt better, that his condition was not any better than it had been on November 23rd when he first had his accident. Second, the medical records showed, as I showed earlier, I discussed earlier, that on December 30th, Petitioner started stating that he was feeling worse, and then through February 11th, his pain started increasing. So if you look at the records, he's rating pain levels, and his pain is simply getting higher and higher as each of these physical therapy sessions continue. Finally, the doctors decided that this also wasn't working, and in order to help him with his pain, they recommended injections. And that's what Petitioner started doing. So it's clear from the record that this physical therapy, the one he was obtaining and the chiropractic treatments at Marquis Medicals, was simply not improving. That's exactly what the arbitrator stated in her decision, and that's exactly what Commissioner Lindsay stated in her dissent. On top of that, the arbitrator did rely on Dr. Bernstein's report, and I would submit to you that so did the commission. However, what the commission did was they changed the issue. They didn't say the report states that he's not improving, the report states that he needs a formal process, formal physical therapy process for four weeks. What they said is it's an active versus passive issue. Well, if your honors look at the record, the word active never appears in the arbitrator's decision. That's not what she based her decision on. She wasn't saying active versus passive treatment. But that's what the commission stated in their modification of the award. What about the TTD award? Are you challenging that as well? The TTD is also being challenged based on Dr. Bernstein's recommendation, had formal physical therapy been implemented as he recommended. We submit that it is our contention that the petitioner would have been able to return to work within the four-week period. Didn't the commission conclude, though, that the therapy claimant was receiving fell within the parameters, shall we say, of what Dr. Bernstein recommended? Didn't they specifically find that? The commission stated that what they thought Dr. Bernstein said was that there should be an active, formal conditioning program. They said if that's what Dr. Bernstein said, then we think the record supports that, that it was active. And I believe they even discussed that he was doing squats and so forth. They listed out the activities that he was doing. Our contention is that's not what Dr. Bernstein was talking about. It was never an issue of active versus passive. It was an issue of an actual formal physical therapy program, a program that lists out or whatnot, whatever it is that most treaters do or most chiropractors do. What he specifically said was no more marking medical treatment that you have been undergoing, no more chiropractic treatment that you have been undergoing, no more passive modalities, formal physical therapy. How do you respond to this? There's conflicting medical evidence. Isn't it within the province of the commission to weigh the weight of that evidence, the credibility, qualifications of the doctors? Isn't that within their purview to make that call? Judge, I agree with that. It's absolutely within their purview. However, there is no conflicting evidence here. The UR report certified 16 of the initial sessions through the end of December, non-certified the rest. Dr. Bernstein said no more after December. I want you on a different physical therapy program, different, not marking medicals, different. Then on top of that, the records clearly show that there was no improvement. The petitioner himself testified, I feel the same, there's no improvement. That's four types of evidence, testimony, records, UR, and IME, all stating no improvement, this is not working. So it wasn't inconsistent, and yes, it is within their purview to weigh those options, but all the evidence showed one thing, and that's that it was not causing him to feel any better, that physical therapy simply wasn't doing what it was supposed to do, and that's why he recommended something different. With that, Your Honors, I submit that the commissioner's decision finding this was incorrect. This was even shown through what the arbitrator, excuse me, what the commissioner stated in her dissent, and that's the following. She stated, as the arbitrator correctly pointed out, none of the physical therapy the petitioner was undergoing after December 30, 2009, was providing any improvement in his physical condition. That's the commissioner's own words. She goes on to say, the issue is not whether the therapy petitioner was receiving at Markey Medicals was active or passive. And that is our contention as well. For these reasons, Your Honors, we ask that the Markey Medical treatment from January 1 of 2010 through February 19 of 2010, and the subsequent $22,835.69 in total charges for that treatment at that portion of the decision to be reversed. Any other questions from the panel? Thank you. Thank you, Counsel. Counsel, you may respond. Good morning, Your Honors. May it please the Court, my name is Matt Jones. I'm here on behalf of the defendant, I believe, Renee Avila. With respect to counsel, we're arguing a manifest weight case under terms of a de novo standard and just changing the words. I think that Your Honor hit on that. What counsel keeps putting forward is the manifest weight of her evidence doesn't support this. However, there is evidence sufficient in the record to justify everything that was done. There was a period of improvement. Then there was a regression. Symptoms fluctuate. The petitioner has a serious low back injury. He had an MRI that showed a descending or an impingement of the L4 nerve root, with an EMG that confirmed it, with physical findings and subjective complaints that all confirm it. He has a significant condition. The argument seems to be, but we don't think so. And I've had a hard time trying to figure out how to argue this, because I keep getting sucked into it as though it's a de novo case and arguing things on a 50-50 scale once again. But when it comes down to it, the commission very solidly found that the petitioner had met his burden, that between his testimony, which was found to be credible, the statements by his treating physicians recommending the carrot issue, which is an omission that counsel has made with regard to the evidence that's on the table, they knew that he was improving and then regressing. They knew there was fluctuation. They still recommended additional care. They stepped it up and recommended epidural injections because it was a serious matter and required additional care. To hear counsel argue it, it would be as though all they did was PT, PT, PT. And then we get into a conversation of whether or not it was active, passive, formal, or chiropractic. Without getting drawn into that, perhaps you can answer her general overarching theme that he wasn't showing any improvement. And he was going on and on with his treatments, and he wasn't showing any improvement. How do you succinctly respond to that overarching argument? Your Honor, I would say two things. One, the injury was November 23, 2009. We're looking at things approximately four months later. This is not to say that this was a 15-month course of never-ending care. There was improvement. Then he regressed. And I would secondly say, you know, Judge Shapiro across the street at the Daly Center put it very succinctly and very appropriately that when we're looking at IMEs and URs and everything across the board, you take the art out of medicine and make it into pure science and nuts and bolts. If somebody is looking at an injured party and says, okay, well, the facts indicate that you were getting better, now you're decreasing a little bit, you've got to make a judgment call in that scenario, other than just saying, okay, you immediately go to a surgeon and we will cut you open tomorrow. There's going to be ebbs and flows that have to be taken in context, you're saying. That would be exactly my argument, Your Honor, and I think that's what we're looking at. And I most certainly do not believe that it rises to the level of a manifest weight question here. I think that the preponderance of the evidence very clearly demonstrated what was going on here, that the treatment was reasonable, that everything thereafter was appropriate, and all of the other issues were appropriately awarded. And to be honest with you, with all possible due respect to counsel, I'm not sure why we're here today. And even the argument of Dr. Bernstein, which TTD and causal are based on in this matter, is the speculation that four weeks later after some other kind of therapy, he would be better. So we're here on a manifest weight question based on a speculative argument that is by its very nature speculative. With that, Your Honors, I address this briefly in my briefs. I honestly believe that this is a sanctionable appeal. I believe that this is frivolous. I do not believe that counsel with whom I have worked many times and who I will work many times in the future and her firm, I don't believe that they looked this up and down and thought that this was a manifest weight situation, but they filed it anyway. And because of that, this was tried on 19B in March of 2010. If this is affirmed, which I would ask that this panel do, he's not going to see $1 until, what, two and a half, almost three years later? What do I tell my client from a public policy standpoint? When I try a case that I've got already ready to go with Ms. Olinska in January, do I tell her that, okay, we'll go to trial, but you're not going to see $1 until 2015 if we win, because there's no reason not to appeal this for three and a half years? What about the argument there's conflicting medical evidence? Doesn't that preclude the imposition of penalties? I didn't ask for penalties. That's the ironic thing about this, Your Honor. I'm not asking for penalties. I'm asking for sanctions for frivolous appeal under 375B. And, Your Honor, once again, it is well within the province of the commission to resolve conflicts in evidence, which was done long ago. There's nothing funny about this. There's no defect of significant degree in the petitioner's evidence. It's not ñ it's nothing more than a black-and-white case, and it was decided as it was. I believe that from a public policy standpoint as well as a judicial economy standpoint, we're going to be back in front of this honorable panel, which I enjoy doing, many, many times, arguing over whether or not the second PTE visit was appropriate based on an IME 25 more times if this is allowed to continue. And for that reason, I would respectfully recommend that sanctions be imposed for filing a frivolous appeal. Thank you. Thank you, counsel. Thank you, Your Honor. Counsel, you may reply. Counsel made a statement before you a moment ago, and it was the following. There was improvement, then he regressed. That's exactly our point. The treatment was reasonable and necessary up to a point. December 30th of 09 was the end point. That month, the record clearly depicts that he was improving. He stated he was improving. He said, I feel better. Then nothing changed. The treatment remained the same. Same exercises, the same chiropractic care, and it was no longer working. That's the point. It did regress. How can treatment be reasonable? How can it be necessary when it's not improving someone's condition? You're essentially going to physical therapy, coming home, and feeling the exact same way as if you walked out that door. And we're talking about $23,000 here of that, back and forth. Well, as he says, is it an absolute science? I mean, the treatment regimen that you alluded to seemed to be working, okay, to a point, and then he fell back and regressed. Maybe within the professional opinion of the doctors, if he stayed with it again for a period of time, he'd get better again. I mean, is this an absolute science? Judge and I would agree with that, except that none of the records indicate. There's no opinion here from any treating physician saying we're going to give this another shot because we think that he's going to start improving again. That's not happening. What they're saying is just continue this, continue this, continue this. Oh, wait, you know what? It's not helping. Let's do injections. And that's what happened. So I disagree. And as far as the manifest weight of the evidence, we know what our burden is. We're absolutely aware of it, and we know that we need to prove that an opposite conclusion was clear. But when you have an IME, a UR, the petitioner's own testimony and medical treatment records showing that he's not improving, we believe that that's pretty direct evidence on the fact that the Commission did not look at the facts here. What they did was they had made up their own issue, passive versus active, said it was active, and called it a day. The opposite conclusion is clear if you look at the actual record and the testimony and the IMEs and the URs and the medical treatment records, all of that together. So, again, I ask that this issue be overturned. Thank you. Thank you, counsel. This matter will be taken under advisement. A written disposition will issue.